**CASE NO. 12-1549**

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

ADAM VIDONI, et al.
*Plaintiff, Appellant*

v.

THE ACADIA CORPORATION
*Defendant, Appellee.*

**Appeal from the United States District Court
For the District of Maine in Civil Action No. 1:11-0448
Nancy Torresen, United States District Judge**

---

_____

**BRIEF FOR APPELLANT**
_____

**CARLSON LYNCH LTD**
Gary F. Lynch
1st Cir. Bar No. 1152588
36 N. Jefferson Street, P.O. Box 7635
New Castle, PA  16107
(p) (724) 656-1555
(f) (724) 656-1556
glynch@carlsonlynch.com

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………..1

TABLE OF AUTHORITIES ................................................................3

STATEMENT OF SUBJECT MATTER AND APPELLATE
    JURISDICTION ...............................................................................5

STATEMENT OF THE ISSUES ......................................................6

STATEMENT OF THE CASE ...........................................................8

STATEMENT OF THE FACTS .........................................................9

STATEMENT OF RELATED CASES AND PROCEEDINGS............11

STANDARD OF REVIEW ...............................................................12

SUMMARY OF THE ARGUMENT ................................................13

ARGUMENT ...................................................................................17

    I.    FACTA AND "THE CLARIFICATION ACT" – AN OVERVIEW......17

    II.    APPLICABLE "WILLFULNESS" STANDARD .................................21

    III.    THE DISTRICT COURT ERRONEOUSLY INTERPRETED THE
        "WILLFULNESS" STANDARD SET FORTH IN *SAFECO* ...............24

    IV.    VIDONI SUFFICIENTLY ALLEGED A PLAUSIBLE CLAIM FOR A
        WILLFUL VIOLATION OF FACTA ...................................................29

    V.    THE DISTRICT COURT IMPROPERLY DREW INFERENCES IN
        FAVOR OF DEFENDANT .................................................................34

    VI.    CONCLUSION ...................................................................................37

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................39

1

CERTIFICATE OF SERVICE ............................................................................40

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Artuso v. Vertex Pharmaceuticals, Inc.*, 637 F.3d 1 (1st Cir.2011)........................12

*Ashcroft v. Iqbal,* --- U.S. ---, 129 S.Ct. 1937 (2009) ................................ 12, 29, 32

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................. 12, 29, 32

*Buechler v. Keyco, Inc.*, 2010 WL 1664226 (D.Md. Apr. 22, 2010).....................33

*Drew v. Equifax Info. Services, LLC*, 2010 WL 5022466
    (N.D. Cal. Dec. 3, 2010) ........................................................................27

*Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*,
    350 F.3d 1327 (5th Cir. 2003)............................................................11, 18

*Kubas v. Standard Parking Corporation,*
    594 F.Supp. 2d 1029 (N.D. Ill. 2009).........................................................33

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
    507 U.S. 163 (1993)....................................................................................29

*Murray v. Sunrise Chevrolet, Inc.*, 441 F.Supp. 2d 940 (N.D.Ill. 2006) ...............19

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011).......................34

*Pfister v. Allied Corp.,* 539 F.Supp.224 (S.D.N.Y. 1982)............................... 29-30

*Pirian v. In-N-Out Burgers*, 2007 WL 1040864 (C.D.Cal. 2007).........................19

*Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp. 2d 1161 (D.Kan. 2008).......... 26-27

*Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) ...............................*passim*

*Sanders v. W & W Wholesale, Inc.*, 2011 WL 4840978
    (N.D.Ill. Oct. 12, 2011).................................................................32, 36-37

*S.E.C. v. Tambone*, 597 F.3d 436, 441 (1st Cir.2010) ...........................................12

*Smith v. Zazzle.com*, 589 F.Supp. 2d 1345 (S.D.Fl. 2008).....................................20

*Zaun v. Tuttle, Inc.*, 2011 WL 1741912 (D.Minn. May 4, 2011) .................... 32-33

## FEDERAL STATUTES

Credit and Debit Card Receipt Clarification Act of 2007,
     Pub.L. 110-241, §3(a), June 3, 2008, 122 Stat. 1566. ............................ 19-20

Fair and Accurate Credit Transactions Act, as amended,
     15 U.S.C. §§ 1681 *et seq*....................................................................*passim*

28 U.S.C. § 1291.......................................................................................................5

28 U.S.C. § 1331.......................................................................................................5

## RULES OF PROCEDURE

Fed.R.Civ.P. 8.........................................................................................................29

Fed.R.Civ.P. 9.................................................................................................... 29-30

Fed.R.Civ.P. 12(b)(6)......................................................................................*passim*

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.  The District Court granted Defendant's/Appellee's motion to dismiss on April 27, 2012.  Plaintiff/Appellant filed a timely notice of appeal on May 3, 2012.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.    Given the Supreme Court's decision in *Safeco Ins. Co. of America v. Burr*, wherein the Supreme Court concluded that a "willful" violation under FACTA's applicable damage provision includes conduct by defendant which merely runs an "an unjustifiably high risk of violating the statute,"  must a plaintiff, in order to state a plausible claim for a "willful" violation of FACTA, additionally allege facts demonstrating that defendant's violation of FACTA created an unjustifiably high risk of the harm FACTA was enacted to prevent, i.e., identity theft?

2.     When the requirements of FACTA are clear ("no person . . . shall print . . . the expiration date"), does plaintiff state a plausible claim that FACTA was "willfully" violated, in light of the Supreme Court's interpretation of "willful" to include both knowing and reckless violations, by alleging that defendant was:  1) apprised of the requirements FACTA prior to the transaction at issue, by credit card issuers, its merchant bank, its POS provider and trade associations or other similar entities; 2) had identical private obligations to comply with FACTA's requirements that preceded the effective date of FACTA; 3) complied with FACTA's requirements at certain of its other business locations; and 4) was the recipient of abundant public information about FACTA's requirements?

3.    Under the appropriate standard for deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), does plaintiff's allegation that defendant was in

compliance with FACTA at certain of its locations, which, as the district court noted, "creates a strong inference" that defendant was aware of FACTA's requirements, provide the basis for a further inference, drawn by the district court decidedly in favor of defendant, that defendant's  violation of  FACTA therefore could not have been "willful?"

## STATEMENT OF THE CASE

This action, initiated on November 23, 2011, was brought by Plaintiff/Appellant Adam Vidoni (hereinafter "Vidoni"), on behalf of himself and others similarly situated, against Defendant/Appellee Acadia Corporation (hereinafter "Acadia"). Vidoni alleges that Acadia willfully violated the Fair and Accurate Credit Transaction Act of 2003 ("FACTA") by providing him with a credit or debit card receipt that displayed the expiration date his Mastercard card. (J.A. 9).

On January 27, 2012, Acadia filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (J.A. 27). The basis for Acadia's motion was its assertion that "Plaintiff has failed to sufficiently allege that Acadia willfully violated FACTA." (J.A. 28).

On April 10, 2012, the District Court held a hearing on Acadia's Motion to Dismiss. On April 27, 2012 the District Court granted that motion. (Addendum 1). This appeal was timely filed, seeking reversal of the District Court's Order Granting Acadia's Motion to Dismiss. (J.A. 104).

## <u>STATEMENT OF THE FACTS</u>

On September 10, 2011, Vidoni made a purchase using his Mastercard credit/debit card at Jordan Pond House Restaurant, operated by Acadia in the Acadia National Park, near Bar Harbor, Maine. (J.A. 9).  At that time, Acadia provided Vidoni with an electronically printed receipt displaying his card's expiration date.  (*Id.*).

On November 23, 2011, Vidoni filed his complaint on behalf of himself and similarly situated individuals alleging that Acadia had violated FACTA.  (J.A. 6). In his Complaint, Vidoni alleges that Acadia was apprised of FACTA's truncation requirements, prior to the transaction at issue, by credit card issuers, its merchant bank, its POS provider and trade associations or other similar entities; Acadia had identical private obligations to truncate that preceded the effective date of FACTA; Acadia complied with FACTA's truncation requirements at certain of its other business locations; and, Acadia was the recipient of abundant information about FACTA's truncation requirements, generally.  (J.A. 18-19).  In turn, Vidoni alleges that Acadia "knew of, or should have known of, and [was] informed about the law, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on printing of expiration dates." (J.A. 23). Vidoni's allegation that Acadia printed a violative receipt and knew about FACTA's requirements supported Vidoni's final allegation that "[d]espite knowing

9

and being repeatedly informed about FACTA and the importance of truncating credit card and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had up to more than three years to comply with FACTA's requirements, [Acadia] willfully violated and continue[s] to violate FACTA's requirements." (J.A. 24).

## <u>STATEMENT OF RELATED CASES AND PROCEEDINGS</u>

Plaintiff/Appellant is unaware of any previous or pending appeals before this Court arising out of the same case or proceeding.  Plaintiff/Appellant is unaware of any related cases or proceedings pending before any other court or agency, state or federal.

## <u>STANDARD OF REVIEW</u>

This Court's review of the District Court's order granting a motion to dismiss for failure to state a claim is de novo.  *S.E.C. v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010).  In determining whether a district court's dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) was proper, this Court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  *Artuso v. Vertex Pharmaceuticals, Inc.*, 637 F.3d 1, 5 (1st Cir. 2011) (citing *Tambone*, 597 F.3d at 441).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## SUMMARY OF THE ARGUMENT

In granting Acadia's Motion to Dismiss, the District Court found that "there are insufficient allegations in the Complaint to create a plausible inference that the Defendant violated FACTA willfully." (Addendum 11).   In reaching this conclusion, however, the District Court misinterpreted and misapplied the Supreme Court's decision in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201 (2007).  Additionally, the District Court improperly drew inferences in favor of Acadia and against Vidoni.

Vidoni does not allege actual damages as a result of Acadia's violation of FACTA.  Rather, Vidoni alleges that Acadia's violation was "willful," thereby entitling him, and the putative class, to statutory damages "of not less than $100 and not more than $1,000. . . ." 15 U.S.C.A. § 1681n(a).

In *Safeco,* the Supreme Court held that a "willful" violation in this context includes conduct by defendant which runs an "unjustifiably high risk of violating the statute." *Safeco,* 551 U.S. at 70.  In enunciating this standard, the Court looked to the common law definition of "recklessness," as set forth in the Restatement (Second) of Torts, analogizing to the situation where a defendant engages in tortious conduct which runs an "unreasonable risk of harm to another." *Safeco,* 551 U.S. at 68, n. 18 (*quoting* 2 Restatement (Second) of Torts § 500, p. 587 (1963-1964).

13

The District Court misinterpreted the reference in *Safeco* to the "unreasonable risk of harm to another" and mistakenly took it to mean that a plaintiff alleging a "willful" FACTA violation must, in addition to alleging conduct by defendant which raises an unreasonable risk that the statute would be violated, further allege conduct by defendant that results in an unreasonably high risk of the harm meant to be prevented by the statute – in this case, identity theft. Respectfully, there is nothing in *Safeco* which requires such an allegation, or such proof.  The district court erred in the ascertainment and selection of this legal precept.

Applying the Supreme Court's definition of "willfulness," as set forth in *Safeco,* there is little question Vidoni has alleged facts establishing a plausible claim that Acadia engaged in a willful violation of FACTA.  The Complaint sets forth multiple allegations that Acadia had knowledge of its duties under FACTA and yet continued to issue noncompliant receipts. Specifically, the Complaint alleges that Acadia was:  1) apprised of the requirements FACTA prior to the transaction at issue, by credit card issuers, its merchant bank, its POS provider and trade associations or other similar entities; 2) had identical private obligations to comply with FACTA's requirements that preceded the effective date of FACTA; 3) complied with FACTA's requirements at certain of its other business locations; and 4) was the recipient of abundant public information about FACTA's

requirements.  Given the clear prohibitions of the statute ("no person . . . shall print

. . . the expiration date"), these allegations of Acadia's awareness of the statute

should not have been overlooked by the district court.  Allegations that Acadia was

aware of the unambiguous requirements of FACTA, but nevertheless violated such

requirements, are sufficient to state a plausible claim that such violation was

committed "knowingly or recklessly," as defined by the Supreme Court in *Safeco*.

Finally, the district court inappropriately drew an inference in Acadia's

favor, resolving the factual question of Acadia's "willfulness" at a premature stage

of the litigation. In his Complaint, Vidoni alleged that Acadia was in compliance

with FACTA at certain of its locations, but not the location where Vidoni received

the violative receipt.    From this allegation, the district court concluded that there

was a "strong inference" Acadia knew of FACTA's requirements.  However, from

such inference, the district court did not  draw the obvious further inference, in

favor of plaintiff, that Acadia must have known (or acted in reckless disregard of

the fact) its conduct in printing the expiration date was a violation of the statute.

Rather, the district court drew the opposite inference, in favor of Acadia, that

Acadia's reasonably-inferred knowledge of FACTA's requirements, and sporadic

compliance with such requirements, somehow demonstrates a lack of "willfulness"

in Acadia's violation of the statute.  Aside from being at odds with the appropriate

standard under Fed. R. Civ. P. 12(b)(6), the district court's reasoning in this regard

is inconsistent with the Supreme Court's definition of "willfulness," as set forth in

*Safeco*.

For the reasons set forth below, the District Court's order granting Acadia's

Motion to Dismiss should be reversed.

# **ARGUMENT**

## I.  **FACTA AND "THE CLARIFICATION ACT" – AN OVERVIEW**

As the preamble to the legislation indicates, FACTA amended the FCRA "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."

Consistent with Congress' stated intention to "prevent identity theft," FACTA amended Section 1681(c) of the FCRA to add the following provision:

> (g) TRUNCATION OF CREDIT CARD AND DEBIT CARD NUMBERS.
>
> > (1) IN GENERAL.  Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.
> >
> > (2) LIMITATION.  This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.
> >
> > (3) EFFECTIVE DATE.  This subsection shall become effective—
> >
> > > (A) 3 years after the date of enactment of this subsection, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

17

> (B) 1 year after the date of enactment of this subsection, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 2005.

As part of the FCRA, FACTA is governed by the FCRA's private enforcement mechanism. This enforcement mechanism, which was enacted and in place before FACTA was passed, provides for separate liability and damages for "negligent noncompliance" versus "willful noncompliance." For negligent noncompliance, Section 1681o of the FCRA provides, in relevant part, that: "Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to – any actual damages sustained by the consumer as a result of the failure . . . ." 15 U.S.C.A. § 1681o(a).

For willful noncompliance, however, the damages provision is expanded to include actual damages OR statutory damages. Specifically, Section 1681n of the FCRA provides, in relevant part, that: "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of – any actual damages sustained by the consumer as a result of the failure **OR** damages of not less than $100 and not more than $1,000. . . ." 15 U.S.C.A. § 1681n(a)(emphasis added).

18

There is no requirement that a plaintiff establish actual damages in order to recover for violations of FACTA:

> …Congress explicitly provided that FCRA plaintiffs may recover statutory damages of $100 to $1,000 for willful violations.  Courts interpreting the FCRA agree with this analysis.  *See, e.g., Hernandez v. Chase Bank USA, N.A.*, 429 F.Supp. 2d 983, 988-89 (N.D.Ill. 2006)(denying motion to dismiss because the complaint stated a FCRA violation despite not alleging actual damages:  'The decision in *Murray* forecloses any arguments that actual damages need to be established for a willful violation of the FCRA') (referencing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)).  As the Seventh Circuit observed in *Murray*, statutes like the FCRA provide for modest damages without proof of injury because the actual loss suffered by an individual is likely to be small and hard to quantify:  'a modest concern about privacy, a slight chance that information would leak out and lead to identity theft.'  *Murray*, 434 F.3d at 953.

*Pirian v. In-N-Out Burgers*, 2007 WL 1040864 at *4 (C.D.Cal. 2007). *See also Murray v. Sunrise Chevrolet, Inc.*, 441 F.Supp. 2d 940, 949 (N.D.Ill. 2006) ("In short, the plaintiff class members may still seek so-called statutory damages as an alternative remedy when they cannot prove and do not seek actual damages.  The statute simply limits the amount of statutory damages available to a plaintiff if she cannot prove actual injury or harm.").

On June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, §3(a), June 3, 2008, 122 Stat. 1566 (hereinafter the "Clarification Act") became effective.  The Clarification Act shielded any business that printed an expiration date on a credit or debit card receipt between December 4, 2004 and June 3, 2008 from a finding of willful noncompliance with FACTA.

The Clarification Act, however, did not eliminate the statutory requirement that card expiration dates not be printed on the credit or debit card receipts. Instead, it created a retroactive safe harbor based on the belief that the original act was confusing as to whether card expiration dates were also required to be redacted. By maintaining the requirement that expiration dates must be deleted, however, the Clarification Act made clear that liability under FACTA can attach when, as in the instant case, a merchant continued to print expiration dates on cardholder receipts after June 3, 2008. *See Smith v. Zazzle.com*, 589 F.Supp. 2d 1345, 1346 n.1 (S.D.Fl. 2008) ("The undersigned has considered the applicability of the Credit and Debit Card Receipt Clarification Act…in which Congress altered the elements necessary for a willful violation for those receipts provided to card holders between December 4, 2004 and June 3, 2008…However, this amendment is not applicable to the instant action because the conduct complained of occurred after June 3, 2008."). Vidoni's Complaint alleges that FACTA was violated on September 10, 2011 – more than three years after the effective date of the Clarification Act – when Acadia provided him with an electronically printed receipt on which Acadia printed the expiration date of Vidoni's credit card. (J.A. 9). Thus, the Clarification Act does not exonerate Acadia from liability.

## II.   <u>APPLICABLE "WILLFULNESS" STANDARD</u>

The Supreme Court addressed the issue of what constitutes a willful

violation under §1681n(a) in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127

S.Ct. 2201 (2007), and held that a willful violation occurs when a defendant

performs an act that violated the statute, either knowing that the action violates the

rights of consumers or is in reckless disregard of those rights:

> GEICO and Safeco argue that liability under § 1681n(a) for "willfully
> fail[ing] to comply" with FCRA goes only to acts known to violate the
> Act, not to reckless disregard of statutory duty, but we think they are
> wrong. We have said before that "willfully" is a "word of many
> meanings whose construction is often dependent on the context in
> which it appears," *Bryan v. United States*, 524 U.S. 184, 191, 118
> S.Ct. 1939, 141 L.Ed. 2d 197 (1998) (internal quotation marks
> omitted); and **where willfulness is a statutory condition of civil**
> **liability, we have generally taken it to cover not only knowing**
> **violations of a standard, but reckless ones as well**, *see McLaughlin*
> *v. Richland Shoe Co.*, 486 U.S. 128, 132-133, 108 S.Ct. 1677, 100
> L.Ed.2d 115 (1988) ("willful," as used in a limitation provision for
> actions under the Fair Labor Standards Act, covers claims of reckless
> violation); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125-
> 126,105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (same, as to a liquidated
> damages provision of the Age Discrimination in Employment Act of
> 1967); *cf. United States v. Illinois Central R. Co.*, 303 U.S. 239, 242-
> 243, 58 S.Ct. 533, 82 L.Ed. 773 (1938) ("willfully," as used in a civil
> penalty provision, includes " 'conduct marked by careless disregard
> whether or not one has the right so to act' " (quoting *United States v.*
> *Murdock*, 290 U.S. 389, 395, 54 S.Ct. 223, 78 L.Ed. 381 (1933))).
> This construction reflects common law usage, which treated actions in
> "reckless disregard" of the law as "willful" violations. *See* W. Keeton,
> D. Dobbs, R. Keeton, & D. Owen, PROSSER AND KEETON ON
> LAW OF TORTS § 34, p. 212 (5th ed. 1984) (hereinafter PROSSER
> AND KEETON) ("Although efforts have been made to distinguish"

the terms "willful," "wanton," and "reckless," "such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit"). **The standard civil usage thus counsels reading the phrase "willfully fails to comply" in § 1681n(a) as reaching reckless FCRA violations**, and this is so both on the interpretive assumption that Congress knows how we construe statutes and expects us to run true to form, *see Commissioner v. Keystone Consol. Industries, Inc.*, 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993), and under the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way, *Beck v. Prupis*, 529 U.S. 494, 500-501, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

*Id.* at 56-57 (emphasis added).

The Supreme Court expressly rejected the argument that only knowing violations of the statute can be considered willful violations.

When the term "willful" or "willfully" has been used in a criminal statute, we have regularly read the modifier as limiting liability to knowing violations. *See Ratzlaf v. United States*, 510 U.S. 135, 137, 114 S.Ct. 655, 126 L.Ed. 2d 615 (1994); *Bryan v. United States*, 524 U.S. 184, 191-192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); *Cheek v. United States*, 498 U.S. 192, 200-201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). This reading of the term, however, is tailored to the criminal law, where it is characteristically used to require a criminal intent beyond the purpose otherwise required for guilt, *Ratzlaf, supra,* at 136-137, 114 S.Ct. 655; or an additional "'bad purpose,' " *Bryan, supra,* at 191, 118 S.Ct. 1939; or specific intent to violate a known legal duty created by highly technical statutes, *Cheek, supra,* at 200-201, 111 S.Ct. 604. Thus we have consistently held that a defendant cannot harbor such criminal intent unless he "acted with knowledge that his conduct was unlawful." *Bryan, supra,* at 193, 118 S.Ct. 1939. **Civil use of the term, however, typically presents neither the textual nor the substantive reasons for pegging the threshold of liability at knowledge of wrongdoing**. *Cf. Farmer v. Brennan*, 511 U.S. 825, 836-837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

(contrasting the different uses of the term "recklessness" in civil and criminal contexts).

*Safeco Ins. Co.,* 551 U.S. at 57 n.9 (emphasis supplied). *See also id.* at 59

(explaining that under rules of statutory construction "'willfully' covers both

knowing and reckless disregard of the law.").

The Supreme Court then explained what constitutes recklessness under

FACTA:

> While "the term recklessness is not self-defining," the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see* PROSSER AND KEETON § 34, at 213-214. The Restatement, for example, defines reckless disregard of a person's physical safety this way:
>
> > "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." RESTATEMENT (SECOND) OF TORTS §500, p. 587 (1963-1964). It is this high risk of harm, objectively assessed, that is the essence of recklessness at common law. *See* PROSSER AND KEETON § 34, at 213 (recklessness requires "a known or obvious risk that was so great as to make it highly probable that harm would follow").

There being no indication that Congress had something different in mind, we have no reason to deviate from the common law

understanding in applying the statute. *See Prupis*, 529 U.S., at 500-501, 120 S.Ct. 1608.

*Safeco Ins. Co.,* 551 U.S. at 68-69.

## III.   THE DISTRICT COURT ERRONEOUSLY INTERPRETED THE "WILLFULNESS" STANDARD SET FORTH IN *SAFECO*[1]

In holding that Vidoni has failed to state a claim that Acadia acted in reckless disregard of its obligations under FACTA, the District Court misapplied the willfulness standard set forth in *Safeco*.   To sustain a claim for recklessness, the District Court held that Vidoni "is required to allege that [Acadia] disregarded an 'unjustifiably high risk of harm' to its customers by failing to omit expiration dates from its receipts." (Addendum 10).  Respectfully, however, the issue is not whether the printing of expiration dates presents a risk of harm to Acadia's consumers, but rather whether Acadia's conduct presented a "high risk of statutory violation."  Congress, by virtue of statutory enactment, has already decided that the printing of expiration dates, alone, bears a risk of identity theft for consumers,

---

1 In its opinion, the District Court stated that Vidoni's counsel "argued that harm could result if a criminal acquired a discarded receipt with an expiration date and name, found out where the cardholder lived, sabotaged that cardholder's trash and found a discarded credit card statement with the cardholder's number…" thereby intimating that it was Vidoni's counsel's position that it was Acadia's printing of expiration dates that created an "unjustifiably high risk of harm" to its customers. However, as is apparent from the motion to dismiss briefing in the district court and from the transcript of proceedings held on April 10, 2012, Vidoni has always maintained that in order to demonstrate a "reckless" violation of FACTA, the plaintiff needs to produce evidence that a defendant ran a "high risk of statutory violation." (J.A. 38-52; 74-103).

sufficient to justify the imposition of statutory damages in the context of a willful

violation.  In determining "willfulness," the District Court's role is not to second

guess the policy considerations behind FACTA's enactment.

As noted above, the Supreme Court has defined "willfulness" to include

both knowing <u>and</u> reckless violations of FACTA:

> [Defendants] argue that liability under §1681n(a) for "willfully fail[ing] to comply" with FCRA goes only to acts known to violate the Act, not to reckless disregard of statutory duty, but we think they are wrong.  We have said before that "willfully" is a "word of many meanings whose construction is often dependant on the context in which it appears," [citation omitted] and where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard but reckless ones as well. . .  This construction reflects common law usage, with treated actions in "reckless disregard" of the law as "willful" violations.  [citations omitted]  The standard civil usage thus counsels reading the phrase "willfully fails to comply" in §1681n(a) as reaching reckless FCRA violations, and this is so both on the interpretive assumption that Congress knows how we construe statutes and expects us to run true to form [citation omitted], and under the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way.

*Safeco*, 551 U.S. at 56–58.

The Supreme Court further adopted the common law tort definition of

"recklessness," and concluded that a defendant acts "recklessly," for the purpose of

§1681n(a), if it engages in conduct "violating an objective standard:  action

entailing 'an unjustifiably high risk of harm that is either known or so obvious that

it should be known.' *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)…Thus, a

company does not act in reckless disregard of FCRA unless the action is not only a

violation under a reasonable reading of the statute, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 68.

Subsequent to the Supreme Court's decision is *Safeco*, courts have interpreted the Supreme Court's analogy to the common law tort definition of "recklessness," not as requiring a FACTA plaintiff to provide evidence of a "high risk of harm," but rather a "high risk of statutory violation." *Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp.2d 1161, 1169 (D.Kan. 2008). In *Ramirez*, for instance, the district court, in rejecting defendant's argument that the Supreme Court's reference to "risk of harm" required plaintiff to establish actual monetary damages, explained:

> In support of this argument, Midwest cites to that portion of the Supreme Court's opinion in [*Safeco,* 551 U.S. 47] in which it stated that it is the "high risk of harm," objectively assessed, that is the essence of recklessness at common law. *Id.* at 69. Relying on this citation, Midwest argues that "willfulness" requires an unjustifiable risk of "harm," thus indicating that Congress did not intend to provide for damages for a "willful" violation in the absence of any actual or risk of harm. This argument rests on an isolated excerpt from *Safeco* and, consequently, on an overly narrow reading of the Supreme Court's holding in that case. The court in *Safeco* used the term "risk of harm" only in the context of analogizing "recklessness" in FACTA to the common law meaning of "recklessness" in tort law. The significance of the Court's holding in *Safeco* was in reading the statutory language "willfully fails to comply" as reaching reckless FCRA violations and in rejecting the defendant insurance companies' argument that the use of the term "willfully" limits liability under §1681n(a) to knowing violations. Thus, it is the reckless disregard of statutory duties (not harm) that makes a violation willful. Nowhere

26

> did the Court in *Safeco* suggest that the "risk of harm" standard from
> tort law is incorporated into the FCRA

*Ramirez*, 537 F.Supp. at 1169. *See also Drew v. Equifax Info. Services, LLC*, 2010 WL 5022466 at *5 (N.D. Cal. Dec. 3, 2010) ("Defendant reads [*Safeco*] to require that a plaintiff consumer show that a credit reporting agency risked harming the plaintiff consumer economically before being entitled to punitive damages. As the rest of *Safeco* makes clear, however, FCRA is concerned with whether the defendant ran an unjustifiably high risk of *violating the law. See* [*Safeco*, 551 U.S.] at 69.").

In addition, the District Court's holding ignores the fact that the United States Department of Justice ("DOJ") has squarely rejected the argument that Congress found no harm in printing the expiration date. This is demonstrated by the DOJ's intervening brief filed in *Hepokoski v. Brickwall of Chicago*, 09-cv-611 (N.D.Ill.): "Brickwall characterizes the finding on which it relies as follows: 'Congress found that printing an expiration date does not present any risk or injury to the consumer's identity or credit.' Def. Motion at 14. Congress found no such thing. *** Congress clarified that printing of an expiration date on any receipt issued 'between December 4, 2004 and June 3, 2008,' without any other violation appearing on the receipt, would not constitute willful noncompliance with FACTA." See Response of the United States in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss (J.A. 55-67). The DOJ further stated:

It was in this context that Congress made the finding, mischaracterized by Brickwall, that "Experts in the field agree that proper truncation of the card number, by itself, . . . regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub.L. 110-241, § 2(a)(6). Nonetheless, and despite the view of these "experts," Congress expressly made the printing of a card's expiration date after June 3, 2008, even on a receipt on which the card number is properly truncated, a violation. It is Congress that determines what its laws require and prohibit; and Congress, having acted to remedy any prior misunderstanding with respect to FACTA's expiration date prohibition, determined that the willful printing of a card's expiration date on a receipt after June 3, 2008, justifies statutory damages.

*Id.*

In light of the standard set forth by the Supreme Court in *Safeco*, the District Court committed a clear error of law in holding that Vidoni must allege facts demonstrating that Acadia's violation of FACTA created an unjustifiable risk of harm to its consumers.   Congress expressly made the printing of an expiration date, in and of itself, a violation of FACTA.  Under *Safeco*, Plaintiff need only allege facts suggesting that defendant, by its conduct, ran an "unjustifiably high risk" of violating FACTA in order to state a plausible willful violation of the statute.  Plaintiff does not also need to allege facts demonstrating that defendant's conduct created an unjustifiably high risk identity theft – the exact harm FACTA was enacted to prevent.

IV.    **VIDONI SUFFICIENTLY ALLEGED A PLAUSIBLE CLAIM
FOR A WILLFUL VIOLATION OF FACTA**

As noted above, the Supreme Court has defined "willfulness" to include

both knowing <u>and</u> reckless violations of FACTA.  Thus, under *Safeco* and the

pleading requirements set forth in *Bell Atlantic v. Twombly*, *Ashcroft v. Iqbal*, and

the Federal Rules of Civil Procedure[2], in order to survive a motion to dismiss,

---

2 Fed. R. Civ. P. 8(a) provides that a complaint shall contain "a short and plain
statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.
P. 8(e) provides that "each averment of a pleading shall be simple, concise, and
direct."  Fed. R. Civ. P. 8(f) provides that all pleadings "shall be construed as to do
substantial justice."  Under the liberal system of "notice pleading" set up by these
Rules, complaints need not contain factual detail.  The United States Supreme
Court explained in *Leatherman v. Tarrant County Narcotics Intelligence &
Coordination Unit*:

> [T]he Federal Rules do not require a claimant to set out in detail the
> facts upon which he bases his claim.  To the contrary all the Rules
> require is a 'short and plain statement of the claim' that will give
> Defendant fair notice of what the Plaintiff's claim is and the grounds
> upon which it rests.

507 U.S. 163, 168 (1993).  As the Court has elucidated in *Ashcroft v. Iqbal*, "When
there are well-pleaded factual allegations, a court should assume their veracity and
then determine whether they plausibly give rise to an entitlement to relief." 556
U.S. at 664.

Rule 9 provides that "malice, intent, knowledge, and other condition of mind of a
person may be averred generally." Fed. R. Civ. P. 9(b). The courts have firmly
established that, pursuant to Rule 9(b), willfulness need not be pled with
particularity.  *See, e.g., Ferguson Beauregard/Logic Controls v. Mega Systems,
LLC*, 350 F.3d 1327, 1343 (5th Cir. 2003).  In *Pfister v. Allied Corp.*, the court
explained the rationale for Rule 9(b) as follows: "Were the Plaintiff required to
aver conditions of the mind with specificity, it would be virtually impossible to do

Vidoni must plead facts that plausibly suggest that Acadia (1) knew of FACTA's requirements and engaged in conduct in violation of those requirements, or, (2) engaged in conduct, in "reckless disregard" of FACTA's requirements.  The court inexplicably gave no credence to several material allegations that directly relate to Acadia's knowledge and "reckless disregard" of FACTA – a statute that clearly and unmistakably prohibits the printing of expiration dates – instead surmising that Acadia's violations of FACTA must have been inadvertent.  These facts relate specifically to Acadia's knowledge of FACTA's truncation requirements; they are not mere conclusory allegations because they point to specific, conspicuous avenues through which Acadia was apprised of FACTA's requirements.

As alleged in his Complaint, on September 10, 2011, after the effective date of the statute and the Clarification Act, Acadia provided Vidoni with an electronically printed receipt on which it printed the expiration date of Vidoni's credit card.  (J.A. 9).  Vidoni further alleges that Acadia "knew of, or should have known of, and were informed about the law, including specifically FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on printing of expiration dates."  (J.A. 23).

In support of his claim that Acadia's violation of FACTA was knowing or objectively reckless, Vidoni alleges as follows:

---

so without presenting all the evidence bearing on the matter at length."  539 F.Supp. 224, 228 (S.D.N.Y. 1982).

42.     Defendant had actual knowledge of FACTA's truncation requirements, or acted recklessly with respect to FACTA's truncation requirements, specifically including the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale.

43.     Upon information and belief, during all times relevant to this Complaint, Defendant has had agreements with various credit card issuers, including VISA, Mastercard, American Express and others, and that those agreements apprise Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

44.     Upon information and belief, prior to the transaction at issue, Defendant received periodic communications from credit card issuers advising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

45.     Upon information and belief, prior to the transaction at issue, Defendant received monthly statements from its merchant bank (or other similar entity that performed credit and debit card payment clearing services for Defendant) which apprised Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

46.     Upon information and belief, prior to the transaction at issue, Defendant received written information from its POS (Point of Sale) provider(s) apprising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

47.     Upon information and belief, prior to the transaction at issue, Defendant received information from trade associations and/or other similar entities apprising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

48.     Upon information and belief, prior to the transaction at issue, Defendant was in compliance with FACTA's truncation requirements at certain of its businesses, but that notwithstanding its knowledge of these requirements, it permitted the printing of thousands of unlawful receipts – on a daily basis over a multi-year

31

period – at the restaurant location operated by Defendant and
described above.

(J.A. 18–19).

For these reasons, (i.e., because Acadia was apprised of FACTA's truncation

requirements, prior to the transaction at issue, by credit card issuers, its merchant

bank, its POS provider and trade associations or other similar entities; because

Acadia had identical private obligations to truncate that preceded the effective date

of FACTA; because Acadia complied with FACTA's truncation requirements at

certain of its other business locations; and, because Acadia was the recipient of

abundant information about FACTA's truncation requirements, generally) the

Complaint alleges that Acadia's violation of FACTA was willful. (J.A. 23–24).

Multiple federal courts (including several which considered the issue after

the Supreme Court's decisions in *Bell Atlantic v. Twombly*, (2007), *Ashcroft v.

Iqbal*, (2009) and *Safeco*, (2007) were rendered) have held that factual allegations,

similar to those here, are sufficient to plead a willful violation of FACTA.  *See

Sanders v. W & W Wholesale, Inc.*, 2011 WL 4840978 (N.D.Ill. Oct. 12, 2011)

(Allegations that defendant was made aware of FACTA's requirements by third

parties, defendant was contractually obligated to comply with FACTA, and

information regarding FACTA was available to the public were sufficient to

overcome a motion to dismiss); *Zaun v. Tuttle, Inc.*, 2011 WL 1741912 (D.Minn.

May 4, 2011) (The plaintiff sufficiently pled a willful violation of FACTA where

the allegations were that the enactment of FACTA and the Clarification Act were well-publicized, and the defendant was informed by a third party that its point of sale terminals needed to be upgraded to comply with the law); *Buechler v. Keyco, Inc.*, 2010 WL 1664226 at *3 (D.Md. Apr. 22, 2010) (Denying the defendant's motion to dismiss where the allegations described "the well-publicized enactment of FACTA provision in 2003; FTC guidance; the 2007 Clarification Act (which required expiration date truncation); similar requirements in the private sector; and FACTA compliance by its competitors"); *Kubas v. Standard Parking Corp.*, 594 F.Supp. 2d 1029, 1031–32 (N.D.Ill. 2009) (Holding that allegations that "FACTA was enacted in 2003 and gave merchants three years within which to comply; Defendants knew about the requirement because card issuers informed them and required compliance with the statute in their contracts with merchants before the mandatory compliance date; and most of Defendants' peers brought their processes into compliance with FACTA but Defendants failed to comply" were sufficient to support an allegation of willfulness).

Vidoni's Complaint provides equal, if not more, detail regarding Acadia's willfulness as the FACTA complaints analyzed in the decisions discussed above, and sets forth facts that plausibly demonstrate that Acadia willfully violated FACTA sufficient to survive a motion to dismiss.

## V.    THE DISTRICT COURT IMPROPERLY DREW INFERENCES IN FAVOR OF DEFENDANT

The District Court relied on one particular allegation to make a consequential inference favoring Acadia, violating the maxim that for purposes of evaluating a Rule 12 motion, a district court should "[construe] the well-pleaded facts of the complaint in the light most favorable to the plaintiffs." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 7 (1st Cir. 2011).

In determining that the facts alleged in Complaint did not allege more than a negligent violation of FACTA, the District Court gave zero analytical treatment to most of Vidoni's allegations, focusing its discussion almost entirely on paragraph 48 (J.A. 19) of the Complaint. Perplexingly, the court explained that:

> The allegation that the Defendant actually was complying with FACTA at other locations undermines the Plaintiff's claim that the Defendant willfully violated FACTA at the Jordan Pond House Restaurant. *The only reasonable inference from the Defendant's failure to implement FACTA at one of its locations and not others is that the Defendant's failure was inadvertent*. The fact that the Defendant truncated the credit card numbers at the Jordan Pond House Restaurant further *supports the inference that the Defendant was neither disregarding FACTA nor indifferent to its requirements.*

(Addendum 8) (emphasis added).  Acadia should not be given such a charitable benefit of the doubt on its own Rule 12 motion.  The District Court seems to suggest, on one hand, that the allegation of Acadia's compliance with the law at other locations means that Acadia *knew of the law* and took efforts to comply, and, on the other hand that Acadia *must not have known that it was violating the law* at

the Jordan Pond House Restaurant. This logic is inconsistent and clashes with the District Court's correct starting point in the analysis, that Acadia's compliance in other locations creates a "strong inference" that it knew of FACTA's requirements. (Addendum 6).

If the District Court had properly construed the facts alleged in the Complaint – in the light most favorable to Vidoni – several reasonable inferences could be drawn: for example, it is plausible that despite knowing FACTA's requirements and that Jordan Pond House Restaurant was not printing compliant receipts, Acadia preferred to defer the expense of updating its equipment to a later date. The Complaint alleges facts which establish the plausibility of this scenario. There is no support for the court's inference in the other direction that Acadia's failure to comply could only be an "inadvertent oversight." (Addendum 10).

Additionally, the District Court relied on Acadia's compliance with FACTA at other locations to distinguish this case from other similar cases where plaintiffs have survived Rule 12 and summary judgment motions, writing that "None of the cases [cited by Vidoni] presented allegations in which the defendants' actions could only reasonably be interpreted as inadvertent oversight." (Addendum 9-10).[3]

---

3 The District Court then made a tangential observation faulting Vidoni for not putting defendants on notice that their receipt violated FACTA, as the plaintiffs have done in certain cases involving credit report errors. (Addendum 10). A plaintiff need not alert a defendant of a FACTA violation in advance of filing suit in order to establish willfulness. While it is true that if Vidoni had warned Acadia

Again, the District Court impermissibly construed facts in favor of Acadia,

inferring that because Acadia was partially compliant it could not possibly have

violated FACTA willfully.

The Northern District of Illinois recently rejected an almost identical motion

to dismiss, explaining as follows:

> W & W argues that Plaintiffs fail to allege facts to suggest willfulness.
> However, issues concerning a state of mind such as knowledge or
> willfulness often involve fact-intensive inquiries and are not ordinarily
> resolved at the motion to dismiss stage. *See United States v. Sabbia,*
> 2011 WL 1900055, at *6 (N.D.Ill.2011) (indicating that the
> defendants' intent was a "factual matter that is premature to address
> at" the motion to dismiss stage). At the motion to dismiss stage, the
> allegations must be accepted as true and viewed in the light most
> favorable to the plaintiff. *Iqbal,* 129 S.Ct. at 1949. Plaintiffs have
> provided allegations from which it can be plausibly inferred that W &
> W may have acted willfully. For example, Plaintiffs allege W & W
> engaged in the FACTA violations in multiple store locations during
> two separate time periods . . . Plaintiffs also allege that the credit card
> companies inform retailers such as W & W of FACTA requirements
> when the credit card companies provide services to retailers . . .
> Plaintiffs also allege that W & W agreed in its contract with VISA
> that it would comply with FACTA . . . Plaintiffs contend that W & W
> was also made aware of FACTA's requirements by the company that
> provided W & W with the point-of-sale credit card terminals . . . In
> addition, Plaintiffs allege that FACTA requirements are readily
> available on multiple public websites and could easily have been
> accessed by W & W . . . Plaintiffs also allege that W & W's business
> peers were able to comply with FACTA . . . Plaintiffs also allege that
> in order for W & W to print the receipts with the expiration dates, W
> & W needed to enter a special code on its own to add that feature to
> the receipts . . . Finally, as W & W itself points out, the Clarification
> Act was passed years before W & W's non-compliance. Plaintiffs

---

that its receipts were noncompliant, he would have additional evidence tending to
show willfulness, such a warning is by no means a requirement for filing suit.

have not been allowed to conduct discovery in this case and cannot be expected to have any more detailed insight into the state of mind of individuals working for W & W at this juncture. While Plaintiffs' allegations, even if true, do not on their face conclusively show W & W acted willfully, they are sufficient at the motion to dismiss stage to plausibly suggest a willful violation of FACTA. Whether W & W was simply acting negligently, as it claims, is a factual issue that cannot be resolved at the motion to dismiss stage. *Zaun v. Tuttle, Inc.*, 2011 WL 1741912, at *2 (D.Minn.2011) (concluding that the plaintiff had alleged sufficient facts regarding willfulness); *Buechler v. Keyco, Inc.*, 2010 WL 1664226, at *3 (D.Md.2010) (concluding that the plaintiff's "complaint plausibly alleges a willful violation of FACTA").

*Sanders v. W & W Wholesale, Inc.*, 2011 WL 4840978 at *2 (N.D.Ill. Oct. 12, 2011) (citations to complaint omitted). As that court correctly explains, since the facts alleged in the Complaint support plausible inferences that Acadia was acting willfully, dismissal is improper at this stage.

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, Vidoni respectfully requests that this Court reverse the District Court's Order and Opinion granting Acadia's Motion to Dismiss.

Respectfully submitted,


/s/ Gary F. Lynch
Gary F. Lynch
1st Cir. Bar No. 1152588
**CARLSON LYNCH LTD**
36 N. Jefferson Street, P.O. Box 7635
New Castle, PA  16107
(p) (724) 656-1555
(f) (724) 656-1556
glynch@carlsonlynch.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c), the undersigned counsel of record certifies this Brief of Appellant complies with the type and volume limitations of Fed. R. App. P. 32(a)(7)(B).

1. According to the word count in the word processing system employed in drafting this brief (Microsoft Word), the Brief of Appellant contains 7,664 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2. This Brief has been prepared using Microsoft Word in Times New Roman 14-point font.

/s/ Gary F. Lynch

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June, 2012, the foregoing BRIEF OF APPELLANT and incorporated Addendum were served on counsel of record via the Court's electronic filing system and on the following by overnight commercial carrier (Federal Express):

Bernard J. Kubetz, Esquire
Eaton Peabody
80 Exchange Street
P.O. Box 1210
Bangor, Maine 04402

I also certify that on the 27th day of June, 2012, ten bound copies of the BRIEF OF APPELLANT and incorporated Addendum were served by mailing through an overnight commercial carrier (Federal Express) to the Office of the Clerk, United States Court of Appeals for the First Circuit.

/s/ Gary F. Lynch

CASE NO. 12-1549

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

ADAM VIDONI, et al.
*Plaintiff, Appellant*

v.

THE ACADIA CORPORATION
*Defendant, Appellee.*

**Appeal from the United States District Court
For the District of Maine in Civil Action No. 1:11-0448
Nancy Torresen, United States District Judge**

**ADDENDUM**

**CARLSON LYNCH LTD**
Gary F. Lynch
1st Cir. Bar No. 1152588
36 N. Jefferson Street, P.O. Box 7635
New Castle, PA  16107
(p) (724) 656-1555
(f) (724) 656-1556
glynch@carlsonlynch.com

# ADDENDUM
## TABLE OF CONTENTS

| Description of Record Entry | Record Entry No. | Addendum Page No. |
|---|---|---|
| Opinion and Order on Motion to Dismiss | R. 20 | 1 |
| Judgment | R. 21 | 13 |

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

ADAM VIDONI,                          )
                                      )
                    Plaintiff,        )
v.                                    )
                                      )  Docket no. 11-cv-00448-NT
THE ACADIA CORPORATION,               )
                                      )
                    Defendant.        )
                                      )

## OPINION AND ORDER
## ON MOTION TO DISMISS

This case comes before the Court on the Defendant's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Plaintiff's proposed class action under the Fair and Accurate Credit Transaction Act of 2003. For the reasons discussed below, the motion is **GRANTED**.

### I. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & 8(d)(1). The First Circuit has set forth, consistent with *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the "proper way of handling a motion to dismiss" under Rule 12(b)(6):

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. Step two: take the complaint's well-pled (*i.e.* non-conclusory,

non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949, 1950).

## II. BACKGROUND

On September 10, 2011, Plaintiff Adam Vidoni made a purchase at the Jordan Pond House Restaurant with his Mastercard credit card. This restaurant is located in the Acadia National Park in Bar Harbor, Maine, and operated by the Defendant. Mr. Vidoni received a receipt from the transaction that did not contain Mr. Vidoni's complete credit card number but did contain his credit card's expiration date. On November 23, 2011, the Plaintiff sued the Defendant on behalf of himself and others who, on or after June 3, 2008, made purchases at retail locations operated by the Defendant and were provided with a printed receipt containing the expiration date of their credit card.

This proposed class action arises out of a provision in the Fair and Accurate Credit Transaction Act of 2003, ("**FACTA**"), which was enacted by Congress to combat identity theft. Pub. L. 108-159, 117 Stat. 1952 (amending the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x). Among other things, FACTA makes it illegal for a "person that accepts credit cards or debit cards for the transaction of business" to "print more than the last five digits of the card number or the

expiration date upon any receipt provided to the cardholder at the point of sale of transaction." 15 U.S.C. § 1681c(g)(1). A merchant who negligently violates this statute is liable for any actual harm sustained by a customer as a result of the violation, plus costs and attorney's fees. § 1681o(a). However, a merchant who willfully violates this statute is liable for statutory damages of between $100 and $1,000 per transaction, plus costs and attorney's fees, and the possibility of punitive damages, irrespective of any actual harm to the customer. § 1681n(a). Mr. Vidoni does not claim any actual harm, and the class proposed in the Complaint excludes anyone "who has suffered identity theft as a result of Defendant's violations of FACTA as delineated in this Complaint."

Much of the Complaint is taken up with reciting various sources — from the U.S. Office of Thrift Supervision and the Federal Trade Commission, to Visa USA, the Credit Union National Association, the National Association of Convenience Stores, and various state restaurant and other trade associations — that have published articles and alerts about FACTA's requirement that the expiration date must be removed from point-of-sale credit and debit card receipts. The Plaintiff also alleges that a federal bill that was approved on June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. 110-241, 122 Stat. 1565, (the "**Clarification Act**"), provided further publicity regarding FACTA's requirements. The Clarification Act gave a safe harbor to merchants who had printed expiration dates on receipts prior to June 3, 2008, by declaring all such violations non-willful. These general allegations do not specifically relate to the Defendant.

3

The Complaint then alleges that the Defendant was apprised of FACTA's expiration date requirement through trade associations, agreements with credit card issuers, its bank or other entity that performed credit and debit card payment clearing services, and/or its point-of-sale providers, but that, notwithstanding its knowledge of this requirement, it permitted the printing of thousands of unlawful receipts. Finally, it alleges that the Defendant was compliant with FACTA's requirements at some of its businesses, but nevertheless knowingly permitted the printing of unlawful receipts at its Jordan Pond House Restaurant location.

## III.    DISCUSSION

The Defendant asserts that the Plaintiff fails to plausibly allege that it committed a willful violation of FACTA. The Court agrees.

FACTA amended and is part of the Fair Credit Reporting Act, 15 U.S.C.A. §§ 1681 – 1681x (2009) ("**FCRA**"). The Supreme Court has defined "willfulness" for purposes of FCRA actions as covering "not only knowing violations... but reckless ones as well . . . ." *Safeco Ins. Co. of Am. v. Burr et al.*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). Recklessness, in turn, is defined as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68.

### A. Knowing Violation

The Plaintiff's primary claim in this case is that the Defendant willfully violated FACTA because it knew about FACTA's truncation requirements and failed to implement those requirements at the Jordan Pond House Restaurant. The

4

4

Plaintiff first asserts that the marketplace was so saturated with news regarding
FACTA's expiration-date-removal requirement that the Defendant could not have
escaped awareness of it. Complaint at ¶¶ 29-41. The Plaintiff next alleges that the
Defendant's credit card issuers, bank, point of sale providers and trade associations
specifically advised Defendant of FACTA's truncation requirements. Complaint at
¶¶ 43-47.

Both sides point to cases either granting or denying motions to dismiss on
allegations similar to those in the Complaint. The Defendant cites to cases that
granted motions to dismiss. *See Seo v. CC CJV Am. Holdings, Inc.*, No. CV-11-05-
31DDP (MRWx), 2011 WL 4946507, \*2 (C.D. Cal. Oct. 18, 2011) (fact that
information about FACTA was available to defendant did not support plaintiff's
assertion that defendant knowingly ignored FACTA's provisions); *Gardner v.
Appleton Baseball Club, Inc.*, No. 09-C-705, 2010 WL 1368663, \*5 (E.D. Wis. March
31, 2010) (FTC's guidance on compliance with FACTA insufficient to infer that
defendant printed expiration dates willfully rather than negligently); *Huggins v.
Spaclinic, LLC*, No. 09 C 2677, 2010 WL 963924, \*2 (N.D. Ill. March 11, 2010)
("Plaintiff alleges that FACTA's requirements were well-publicized and that credit
card companies required compliance with the statute, but these allegations are not
specific to the defendant.").

The Plaintiff points to cases that have denied motions to dismiss. *See
Sanders v. W&W Wholesale Inc.*, No. 11 C 3557, 2011 WL 4840978, \*2 (N.D. Ill. Oct.
12, 2011) ("[I]ssues concerning a state of mind such as knowledge or willfulness

often involve fact-intensive inquiries and are not ordinarily resolved at the motion to dismiss stage."); *Zaun v. Tuttle, Inc.*, No. 10-2191 (DWF/JJK), 2011 WL 1741912 (D. Minn. May 4, 2011) (because defendant disregarded its third-party compliance contractor's warning that defendant would need to upgrade its terminals to comply with FACTA, complaint adequately alleged willful violation.); *Buechler v. Keyco, Inc.*, No. WDQ-09-2948, 2010 WL 1664266, *3 (D. Md. April 22, 2010) (defendant's failure to follow FACTA's well-publicized truncation requirements sufficient to allege a willful violation of FACTA).

One of the Plaintiff's allegations in this case, however, distinguishes it from any of the cases cited by either side. The Plaintiff alleges that the Defendant was in compliance with FACTA's truncation requirements at some of its businesses.[1] The allegation that the Defendant was complying with FACTA at other locations, which the Court accepts as true at the motion to dismiss stage, creates a strong inference that it knew of FACTA's requirements.

But that does not end the analysis. In order to allege a willful violation, there must be some allegation that the Defendant knew of the standard and voluntarily or intentionally violated it. The First Circuit, assessing whether OSHA violations were willful, explained:

> Various decisions have defined "willful" violations as "conscious and intentional disregard of conditions;" "deliberate and intentional misconduct;" "careless disregard of employee safety;" "utter disregard

---

[1]    The Complaint alleges that the Defendant "operates multiple retail interpretive centers in the Acadia National Park and several gift shops outside the park in the Bar Harbor Community." It also alleges that "[u]pon information and belief, prior to the transaction at issue, Defendant was in compliance with FACTA's truncation requirements at certain of its businesses . . . ." Complaint at ¶¶ 14 & 48.

of consequences;" and similar descriptions. They all indicate that the Complainant should at least prove that the Respondent knew of the standard, and its violation was voluntary or intentional or with plain indifference to the Act.

*Brock v. Morello Bros. Const. Inc.,* 809 F.2d 161, 164 (1st Cir. 1987).

This concept of deliberateness is repeated throughout the Supreme Court cases which have developed and elucidated the "willfulness" standard leading to its iteration in the *Safeco* case. In *United States v. Illinois Central R. Co.,* 303 U.S. 239, 243, 58 S.Ct. 533, 82 L. Ed. 773 (1938), the Court held that conduct of a railroad carrier which showed disregard for and indifference to the requirements of a statute requiring regular unloading of cattle from railroad cars for rest, watering and feeding, was willful. In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985), the Court, in the context of a statute which provided liquidated damages for willful violations of the Age Discrimination in Employment Act of 1967 ("**ADEA**"), rejected a definition of "willful" which would have included violators who "simply knew of the potential applicability of the ADEA." *Id.* at 127. The *Thurston* Court adopted the language, later applied to the FCRA in *Safeco,* that a willful violation was one in which the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA. *Id.* at 126. Finding that TWA had not acted willfully, the Court stated: "The record makes clear that TWA officials acted reasonably and in good faith in attempting to determine whether their plan would violate the ADEA." *Id.* at 129. In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988), the Court applied the *Thurston* definition of "willful" in the context of

a Fair Labor Standards Act provision which provided a longer statute of limitations period for willful violations. The *McLaughlin* Court explained:

> In common usage, the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th Ed.). The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent.

*Id. McLaughlin* rejected the Fifth Circuit's definition of "willful" in which a defendant willfully violates a statute if the defendant merely "knew that the [statute] 'was in the picture'" as a definition that "obliterates any distinction between willful and nonwillful violations." *Id.* at 132-33. *Safeco* cited *Thurston* and *McLaughlin* in its discussion of the meaning of "willful" under the FCRA. *Safeco*, 551 U.S. at 57. Although *Safeco* was concerned with establishing the "reckless disregard" prong of willfulness, it did not discard or undermine the Court's earlier explanations of the term "willful."

Merely being aware of a statute, then, is insufficient to state a claim for willfulness. In cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, *i.e.* a voluntary, deliberate, or intentional violation. *McLaughlin,* 486 U.S. at 132-33. The allegation that the Defendant actually was complying with FACTA at other locations undermines the Plaintiff's claim that the Defendant willfully violated FACTA at the Jordan Pond House Restaurant. The only reasonable inference from the Defendant's failure to implement FACTA at one of its locations and not others is that the Defendant's failure was inadvertent. The fact that the Defendant truncated

8

8

the credit card numbers at the Jordan Pond House Restaurant further supports the inference that the Defendant was neither disregarding FACTA nor indifferent to its requirements. The Defendant's conduct may have been negligent, but, on the facts alleged in the Complaint, it was not willful.

The Plaintiff also argues that dismissal of his case is generally inappropriate because "a determination of willfulness under the FCRA is almost always a question of fact for the jury." *Plaintiff's Opposition to Defendant's Motion to Dismiss*, p. 7 (Doc. # 12). All of the cases cited by the Plaintiff in support of this assertion are credit reporting cases in which the plaintiffs presented evidence that the defendants were either aware that their procedures were inadequate to meet the FCRA's requirements or were repeatedly committing errors of the sort that had harmed the plaintiffs, suggesting reckless disregard.[2] None of the cases presented allegations in which the defendants' actions could only reasonably be interpreted as an

---

[2]     The Plaintiff cites six cases including *Sheffer v. Experian Info. Solutions, Inc.*, No. CIV.A. 02–7407, 2003 WL 21710573, *3 (E.D. Pa. July 24, 2003) (summary judgment on defendant credit reporting agency's liability for willful violation of FCRA denied in suit alleging credit reporting agency failed, despite repeated requests from plaintiff, to correct credit report erroneously stating that plaintiff was deceased); *Harris v. Equifax Info. Servs, LLC*, No. 6:06-cv-01810-GRA, 2007 WL 1862826, *2 (D.S.C. June 26, 2007) (defendant denied summary judgment on question of willful violation of FCRA where plaintiff produced evidence that defendant knew its failure to include credit limit data was harmful to consumers and not in compliance with FCRA); *Thomas v. U.S. Bank, N.A.*, CV 05-1725-MO., 2007 WL 764312, *8 (D. Or. March 8, 2007) (question of willful violation of FCRA survived summary judgment where defendant credit reporting agency repeatedly failed to discover and report on plaintiff's credit report significant, readily ascertainable information); *Cairns v. GMAC Mort. Corp.*, No. CIV 04-1840-PHX-SMM, 2007 WL 735564, * 8 (D. Az. March 5, 2007) (same as *Thomas*); *Apodaca v. Discover Financial Services*, 417 F.Supp. 2d 1220, 1234 (D.N.M. 2006) (denying summary judgment to defendant on question of willful violation of FCRA because plaintiff presented evidence that credit reporting agency was aware its programs and information processing procedures were inadequate to accurately compile and report consumer credit information); *Johnson v. MBNA America Bank Nat'l Ass'n*, No. Civ. 1:05CV00150, 2006 WL 618077, *5 (M.D.N.C. March 9, 2006) (summary judgment on question of willful violation of FCRA denied to defendant bank that failed, following repeated inquiries and requests by deceased consumer's wife, to either disassociate plaintiff from the debt or to provide clear evidence to plaintiff of her liability on the account).

9

inadvertent oversight. The plaintiffs in *Sheffer*, *Harris*, *Thomas*, *Cairns*, *Apodaca*, and *Johnson* had all complained, sometimes multiple times, to the defendants about the errors in their credit reports prior to filing suit. By contrast, the Plaintiff here makes no claim that he alerted the Defendant to its FACTA violation prior to filing suit, much less that the Defendant continued in a course of non-compliance following any such communication. The Plaintiff's interaction with the Defendant in this case instead consists of a single transaction that the Plaintiff did not report to the Defendant.

### B. Reckless Disregard

The Plaintiff also refers to the reckless disregard component of willfulness, stating "Defendant had actual knowledge of FACTA's truncation requirements, or acted recklessly with respect to FACTA's truncation requirements . . . " and "Defendant knew of, or should have known of, and were [*sic*] informed about the law . . . ." Complaint at ¶¶ 42, 69.

To sustain a claim for recklessness, the Plaintiff is required to allege that the Defendant disregarded an "unjustifiably high risk of harm" to its customers by failing to omit expiration dates from its receipts. *See Safeco*, 551 U.S. at 68. Congress, however, has acknowledged that "[e]xperts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card theft." S*ee* Clarification Act, § 2(a)(6). At oral argument, Plaintiff's

10

counsel argued that harm could result if a criminal acquired a discarded receipt with an expiration date and name, found out where the cardholder lived, sabotaged that cardholder's trash and found a discarded credit card statement with the cardholder's number. With these three pieces of information, Plaintiff's counsel posited, the criminal could make charges to the account. While this scenario is technically possible, it does not generate the "high risk of harm" contemplated by the standard.

Reckless disregard may be found where a merchant either deliberately fails to determine the extent of its statutory obligations, as in *Zaun*, 2011 WL 1741912 at *2, or relies on creative lawyering to provide it with an indefensible position on the scope of such obligations, s*ee Safeco*, 551 U.S. at 69. The Complaint alleges no facts that would bring this case within either of these categories. Accordingly, the Plaintiff fails to state a claim that the Defendant recklessly disregarded its obligations under FACTA.

## CONCLUSION

Viewed in the light most flattering to the Plaintiff, there are insufficient allegations in the Complaint to create a plausible inference that the Defendant violated FACTA willfully. Because the Plaintiff acknowledges that he suffered no harm and because he purports to represent a class that excludes anyone who has suffered harm, the Complaint fails to state a claim upon which relief can be granted. Accordingly, the Defendant's motion to dismiss the Complaint is **GRANTED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 27th day of April, 2012.

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

ADAM VIDONI                          )
                                     )
v.                                   )      CIVIL NO.  1:11-CV-448-NT
                                     )
THE ACADIA CORPORATION   )

J U D G M E N T

The defendant's Motion to Dismiss having been granted by the Court on April 27,

2012, judgment is hereby entered for the defendant, The Acadia Corporation, against the

plaintiff, Adam Vidoni, and the complaint is hereby DISMISSED.

Dated at Portland, Maine, this 30th day of April.

CHRISTA K. BERRY
CLERK

By: /s/ Michelle Thibodeau
Deputy Clerk